## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER PAN BUS LINES, INC.<br>and GREYHOUND LINES, INC.,<br>    Plaintiffs,<br>v.<br><br>FUNG WAH BUS TRANSPORTATION,<br>INC. and KRISTINE TRAVEL AND<br>TOURS, INC. d/b/a TRAVEL PACK,<br>    Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil Action<br>No. 04-10946-JLT |

## AFFIDAVIT OF PEI LIN LIANG, PRESIDENT OF FUNG WAH BUS TRANSPORTATION, INC., IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pei Lin Liang, under oath, deposes and says as follows:

1.    I am the President of the defendant, Fung Wah Bus Transportation, Inc. ("Fung Wah"). I am making this affidavit based upon personal knowledge. To the extent that any statements contained herein are made upon information and belief, I believe such statements to be true.

2.    I am authorized to submit this affidavit in opposition to the motion of the plaintiffs, Peter Pan Bus Lines, Inc. ("Peter Pan") and Greyhound Lines, Inc. ("Greyhound"), for a preliminary injunction. I believe the true purpose behind the plaintiffs' motion is for those two large companies to drive Fung Wah out of business, in order that the plaintiffs will have no competition on the Boston-New York route -- which would allow the plaintiffs to increase their rates. I respectfully

submit that this is not in the public's interest. The public is best served by more, not less, competition.

3.    Fung Wah has been in business operating buses since 1998. I have at all times understood that Fung Wah was properly licensed by the appropriate authorities and maintained the required safety standards and carried the necessary insurance.

4.    In March, 2001, Fung Wah's attorney, Michael Lam, Esq., submitted an Application for Motor Passenger Carrier Authority to the United States Department of Transportation – Federal Motor Carrier Safety Administration ("USDOT"). In Section VII of the Application, Fung Wah filled in the box indicating that it sought a license for charter and special transportation -- as well as for a common carrier over "regular routes." A copy of the 2001 Application is attached as Exhibit A.

5.    On or about February 4, 2002, Fung Wah received a certificate (MC-405969-C) from the USDOT. Fung Wah assumed that the certificate was in accordance with the Application. Fung Wah did not realize that the certificate was only for "charter and special operations," and not "regular routes."

6.    Upon information and belief, the only reason that Fung Wah did not receive the "regular routes" certificate is because the USDOT did not receive a map of the route Fung Wah's buses take between Boston and New York. However, I specifically recall submitting that map with our original application. Moreover, no one at USDOT ever informed Fung Wah that its Application was incomplete.

7.     Since 2001, Fung Wah has increased its business from four trips daily between Boston and New York to 18 trips daily.  During this period, Fung Wah has provided reliable, courteous and clean transportation —originally for $25, and since April, 2003 for only $10 each way.  Fung Wah has never had a serious accident; it has a spotless safety record.

8.     As recently as one month ago, Fung Wah received a satisfactory motor carrier safety rating from the USDOT.  A copy of the safety rating is attached as Exhibit B.  In addition, Fung Wah complies with all other federal regulations including, inter alia, maintaining driver safety training and orientation programs, accident registers, and standards for vehicle inspection, repair and maintenance.

9.     Because Fung Wah has provided a comfortable and inexpensive alternative to the plaintiffs, it has met the public's demand and our buses are packed regularly.

10.     Fung Wah has also provided employment to approximately 30 employees.  Fung Wah has also made a substantial investment in its fleet of 18 buses.  In many ways, Fung Wah is a model of the American dream, where immigrants have worked hard to create a successful business in America.  While, admittedly, Fung Wah does not generate great profits at the price of $10 per passenger -- it has provided steady employment and meets the public's demand.

11.     In contrast, Peter Pan and Greyhound admit in their Complaint that their true motivation is to enjoin and put Fung Wah out of business so that the plaintiffs can maintain their much higher profit margins.  Simply stated, the

plaintiffs want to make even more profits. There is noticeably no mention in their papers of the public's interest in competition between carriers to reduce rates, which would benefit the consumer.

12.     Following receipt of the Summons and Complaint, which was the first time that Fung Wah became aware that it might not have the correct certificate from the USDOT, I immediately contacted Attorney Lam and explained the situation. Mr. Lam spoke with the USDOT, which apologized for the error. Patricia Mills, at the USDOT in Washington, D.C., instructed Attorney Lam to resubmit our Application for a "regular route" certificate -- to her attention. She promised to expedite the approval process from "months" to "weeks." Attached as Exhibit C is a copy of the Application resubmitted on May 19, 2004.

13.     For the past two years, Fung Wah has operated a de facto legal and certified bus service between Boston and New York (despite the apparent confusion over the certificate -- all because of a technical omission: a map of our route may have become displaced from the original application). I respectfully submit that, since Fung Wah is actively and promptly taking steps to obtain the correct certificate, there is no prospective harm to allow Fung Wah to continue to operate for the few weeks in the interim until the certificate is received. If anything, Fung Wah and the public would suffer the greater injury since it would have to shut down its operations and lay off its 30 hard working employees.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _2/_

DAY OF MAY, 2004.

Pei Lin Liang