UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 MAY 27 A 9:29

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| PETER PAN BUS LINES, INC. and GREYHOUND LINES, INC., <br> Plaintiffs, <br><br> v. <br><br> FUNG WAH BUS TRANSPORTATION, INC. and KRISTINE TRAVEL AND TOURS, INC. doing business as TRAVEL PACK, <br> Defendants. | CIVIL ACTION <br> NO. 04-10946-JLT |

## DEFENDANT KRISTINE TRAVEL AND TOURS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

Kristine Travel and Tour's Inc., a local, family-owned and operated bus company submits this memorandum of law in opposition to plaintiffs' motion for preliminary injunction. Plaintiffs' motion should be denied in its entirety as it is nothing more than a bald faced attempt to stifle legitimate robust competition by resort to a *de minimis* statutory violation, thereby exalting form over substance. Plaintiffs' affidavits are filled with hyperbole and hearsay, or otherwise are not competent to support such drastic injunctive relief. Furthermore, the cases cited in plaintiffs' memorandum are inapposite to this case and clearly not the law as set out in the applicable federal authorities. There is no reasonable likelihood that plaintiffs will prevail on the merits of their claims. Conversely, the potential harm to the defendant Kristine Travel, if enjoined as requested, is both substantial and irreparable, as the business would lose valuable customer goodwill developed over many years of costly investment, hard work and successful operation.

Even assuming, *arguendo*, that any of plaintiffs' points have merit, Kristine Travel has already applied for so-called "regular route" authorization from the Federal Motor Carrier Safety Administration, and expects to be approved for same within the next thirty days. (See Affidavit of Henry Lau, Kristine Travel's President, Exhibit M, submitted herewith.)

## II. FACTS

### A. Kristine Travel's Business

Kristine Travel has been providing safe, inexpensive and readily-accessible bus service between Boston and New York City since 1999. This service began as a small, informal van service which grew, largely by word-of-mouth, into a reliable and hugely popular transportation service for the general public seeking cost-effective "no frills" travel between Boston and New York City. (See Affidavit of Harry Lau dated May 26, 2004, Kristine Travel's President, paragraphs 3-5, hereinafter "Lau Affidavit" submitted herewith.)

### B. Kristine Travel is Registered for Interstate Motor Coach Operation

Kristine Travel registered for interstate special and charter service with the Federal Motor Carrier Safety Administration ("FMCSA") in 1999. At the time, its business focused more on charter trips and less so on the Boston to New York run. In order to register with the FMCSA, Kristine Travel had to demonstrate that it had the proper liability insurance, safety procedures, and the ability to follow all applicable federal regulations governing commercial carriers. (See United States Department of Transportation Application for Motor Passenger Carrier and Broker Authority attached hereto.) Kristine Travel was, in fact, able to make the requisite showings and was registered on March 1, 1999. The registration certificate itself indicates that "*[w]illful and persistent noncompliance with applicable safety fitness regulations* as evidenced by a DOT safety fitness rating of 'Unsatisfactory'" *could* result in a suspension or revocation of the granted

2

authority." (Emphasis added.) (See Registration Certificates appended to Schwartz affidavit as part of plaintiffs' submissions.) Kristine Travel believed in good faith that it had registered properly. (Lau Affidavit, paragraph 24.) It has never had its registration suspended or revoked by FMCSA. Immediately upon learning of the technical deficiency alleged in plaintiffs' complaint, Kristine Travel applied for regular route authority. (Lau Affidavit, paragraph 23.)

### C. Kristine Travel Continues to Meet All Applicable Safety Standards and Regulations Promulgated by the FMCSA

Kristine Travel maintains the requisite level of insurance required by the FMCSA's minimum financial responsibility regulations. (Lau Affidavit, paragraph 12.) Moreover, Kristine Travel maintains a comprehensive safety program which includes a comprehensive system for overall compliance with Federal Motor Carrier Safety Regulations. (Lau Affidavit, paragraphs 11 & 16.) This includes driver safety training, standards for driver qualifications, and mandatory random drug testing. (Lau Affidavit, paragraph 16.) Kristine Travel also has policies and procedures in place which are consistent with the Department of Transportation regulations governing the operational safety of its vehicles, which include hours of service monitoring and vehicle repair and maintenance. (Lau Affidavit, paragraph 14-19.) Kristine Travel also has a system in place for compliance with the Department of Transportation regulations governing alcohol and controlled substances testing requirements. (Lau Affidavit, paragraph 16(g)) Kristine Travel is currently in good standing with DOT with respect to all of these safety requirements, and enjoys a "Satisfactory" rating. (Lau Affidavit, paragraph 13.)

### D. The Requirements for Obtaining Motor Passenger Carrier Authority From FMCSA are the Same Irrespective of the Type of Authority Sought

A company wishing to obtain motor passenger carrier authority must complete Form OP-1(P), irrespective of the type of authority it seeks. If any one of the vehicles operated by the

3

applicant has a seating capacity of 16 passengers or more, the operator must maintain $5 million in minimum liability insurance coverage. Moreover, all applicants must complete the safety certification which appears on Form OP-1(P). In so certifying, the applicant is verifying that at a minimum it:

1. has in place a system and an individual responsible for insuring overall compliance with Federal Motor Carrier Safety Regulations;

2. can produce a copy of the Federal Motor Carrier Safety Regulations and the Hazardous Materials Transportation Regulations;

3. has in place a driver safety training/orientation program;

4. has prepared and maintains an accident register pursuant to 49 CFR 390.15;

5. is familiar with D.O.T. regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements pursuant to 49 CFR Part 391;

6. has in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance pursuant to 49 CFR Parts 392, 395, and 396;

7. is familiar with and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances' testing requirements pursuant to 49 CFR 382 and 49 CFR Part 40.

(See United States Department of Transportation Application for Motor Passenger Carrier and Broker Authority attached hereto as Exhibit 1.) All applicants subject to the Federal Motor Carrier Safety Regulations are required to register with the U.S. Department of Transportation and obtain a "USDOT" number before initiating service. Kristine Travel has had its USDOT number since 1999.

4

### E. The Requested Scope of Operating Authority has no Bearing on the FMCSA Insurance and Safety Regulation Requirements

The instructions for Section VII of Form OP-1(P) define "special and charter operations" as "operations generally conducted over irregular routes (i.e., authority that is not restricted to particular roads or highways), between points in the United States." So-called "regular routes" authority is defined as "authority to perform regularly scheduled service between designated points and operating over named roads or highways." (See United States Department of Transportation Application for Motor Passenger Carrier and Broker Authority attached hereto.) An applicant requesting authority to operate over regular routes must merely describe the specific routes over which it intends to provide regularly scheduled service, and include a map identifying each regular route involved in the carrier service. This is the **only** difference between applying for special and charter service authority and regular route authority. All passenger carrier applicants, regardless of the type of authority sought, must certify as follows: "Applicant is fit, willing, and able to provide the proposed operations and to comply with all pertinent statutory and regulatory requirements." (See United States Department of Transportation Application for Motor Passenger Carrier and Broker Authority attached hereto.) Since Kristine Travel has continuously met all of these conditions under its charter authority since 1999, it fully expects the pending application for regular route authority will be granted in due course.

### F. Kristine Travel Abides the Regulations Applicable to Regular Route Carriers Regarding Insurance and Safety

Kristine Travel has had a comprehensive safety and maintenance program consistent with the applicable FMCSA regulations since 1999. Plaintiffs' have offered no evidence whatsoever tending to refute this fact. (Lau Affidavit submitted herewith.)

## III. THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

The First Circuit has articulated the standard a party must meet to obtain preliminary injunctive relief. The four following criteria must be demonstrated by the movant:

1. The plaintiff will suffer irreparable injury if the injunction is not granted;

2. Such injury outweighs any harm which granting the injunction would inflict upon the defendant;

3. Plaintiff has exhibited a likelihood of the success on the merits; and

4. The public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Mass.* v. *Belotti*, 641 F.2d. 1006, 1009 (1st Cir. 1981). "The heart of this test is the second and third steps, which present the question whether the harm caused plaintiff without the injunction, *in light of* the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants." *Vargas Figueroa* v. *Saldana*, 826 F.2d 160, 162 (1st Cir. 1987) (emphasis in original). Plaintiffs fail utterly to meet this standard.

## IV. THE PRELIMINARY INJUNCTION SOUGHT BY PLAINTIFFS SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

### a) Kristine Travel is in Compliance with the Substance of the Law

The Motor Carrier Act of 1980, 49 USC 13101 *et. seq.*, [now the ICC Termination Act] sets forth the transportation policy of the United States:

> To ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States..., it is the policy of the United States Government to oversee the modes of transportation and –
>
> (1)   in overseeing these modes –

6

 (B) to promote safe, adequate, economical, and efficient transportation;

 (C) to encourage sound economic conditions in transportation, including sound economic conditions among carriers;

 (D) to encourage the establishment and maintenance of reasonable rates for transportation, without unreasonable discrimination or unfair or destructive competitive practices...

49 U.S.C. 13101(a). This policy was expounded upon in the case of *Central & Southern Motor Freight Tariff Ass'n v. Household Goods Carriers Bureau*, 757 F. 2d 301 (D.C. Cir. 1985):

> To borrow the words of the authoritative House Committee report, 'the legislation establishes a new Federal Policy which is *to promote a competitive and efficient motor carrier industry.* It is clearly the Committee's intent that the Commission must *recognize the importance of competition and efficiency in motor carrier operations* as the most desirable means for achieving national transportation goals and objectives.'

(Emphasis added.) Thus, the statutory scheme is meant to promote competition, not stifle it, as plaintiffs would have the court do in this instance. 49 USC 13902 governs the registration of motor carriers under the Act:

> [T]he Secretary shall register a person to provide transportation ...as a motor carrier if the Secretary finds that the person is willing and able to comply with —
>
> (A) this part and the applicable regulations of the Secretary and the Board;
>
> (B) any safety regulations imposed by the Secretary and the safety fitness requirements established by the Secretary under Section 31144; and
>
> (C) the minimum financial responsibility requirements established by the Secretary pursuant to Section 13906 and 31138.

See 49 U.S.C. 13901(a). The House Committee Conference Report on the private enforcement provision makes clear that Section 14707 "preserves the current private enforcement of licensing

7

(now registration) requirement by persons injured by *unlicensed (unregistered)* transportation or service." See 104 H. Rpt. 422 (Section 3) dated December 18, 1995, to the ICC Termination Act of 1995. The implementing regulations provide in pertinent part:

> (a) Fitness applications. Motor property applications and certain types of motor passenger applications require only the finding that the applicant is fit, willing and able to perform the involved operations and to comply with all applicable statutory and regulatory provisions. *These applications can be opposed only on the grounds that applicant is not fit to [e.g., is not in compliance with applicable financial responsibility and safety fitness requirements].* These applications are:
> ....
> (3)  Certain types of motor passenger applications as described in Form OP-1(P).

(Emphasis added.) The combined effect of the statutory mandate and the implementing regulations is to promote honest, good faith competition among safely operated motor carriers. As set forth more fully above, Kristine Travel does, in fact, comply with all of the requisite FMCSA rules and regulations. These regulations occupy approximately 500 double-columned pages of the Code of Federal Regulations. See 49 CFR Ch. III. Plaintiffs cannot seriously complain that they are somehow the victims of unfair competition because they are forced by regulation to operate *more expensively* than Kristine Travel. Like plaintiffs, Kristine Travel incurs considerable expense to comply with the FMCSA regulations. (Lau Affidavit, paragraph 15.) It has expended substantial sums to operate in a clean, safe and reliable manner, consistent with federal law. (Lau Affidavit, p. 15-16.)

The major FMCSA regulations are as follows. 49 CFR 391.1 governs general requirements for commercial motor carrier drivers:

> The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers. The rules in this part also establish minimum duties of motor carriers with respect to the qualification of their drivers.

8

See 49 CFR 390.1(a). Section 391.11 governs specific qualifications for drivers such as age (*i.e.*, 26 years); proficiency in English; ability to safely operate the subject vehicle; currently valid commercial license; and successful driver's test. See 49 CFR 391.11(b). The remaining parts of 49 CFR 391 concern a driver's application for employment by a motor carrier (49 CFR 391.21), annual review of driver's record by motor carrier (49 CFR 391.25), appropriate road testing of driver by motor carrier (49 CFR 391.31); and physical qualifications and annual medical examinations. 49 CFR 392 governs the safe driving of commercial motor vehicles and prohibits operating vehicles while ill, fatigued, or under the influence of certain drugs or alcohol. Also, all vehicles must comply with applicable speed limits. Again, Kristine Travel has been fully compliant with these applicable regulations since 1999. (Lau Affidavit submitted herewith.)

### b) The Technical Violation Relied Upon by Plaintiffs is Clearly *De Minimis*

As a jurisdictional prerequisite, Plaintiffs must show "a clear violation of Section 13901-13904..." A "clear" violation under the statute is one which is "openly and obviously unlawful." *Aspen Limousine Service, Inc. v. Colorado Mountain Express, Inc.*, 891 F. Supp. 1450, 1455 (D. Colo. 1995). The legislative history of section 14707 allowing for "self-help" in the form of injunctive relief provides:

> These new provisions are intended to afford injured parties a measure of self-protection against operations which are openly and obviously unlawful...As was stated in the Senate report...in explanation of an amendment to section 222(b) of the act which is identical to that proposed in this legislation:
>
>> No district court is to entertain any action except where the act complained of is openly and obviously for-hire motor carriage without authority under the sections enumerated above ***The language of the section is designed to make it clear that the *court's would entertain only those suits which involve obvious attempts to circumvent operating regulation.* (Emphasis added.)

9

See 1956 U.S. Code Congressional and Administrative News (Vol. 2) 2931. [Former section 222(b) is currently 49 U.S.C. § 14707]. By virtue of this explanatory language alone, plaintiffs' complaint is more properly summarily dismissed than entertained any further by the Court.

Kristine Travel implements and follows all of the same regulations which regular route carriers must follow. Thus, there is no practical difference between special and charter route carriers and regular route carriers in terms of the applicable qualifying requirements. As the implementing regulations make clear, applications for operating authority can only be opposed on grounds that the applicant "is not in compliance with applicable financial responsibility [i.e., insurance] and safety fitness requirements." 49 CFR 365.107. Nowhere in plaintiffs' submissions do they call into question Kristine Travel's adherence to the applicable safety rules and other FMCSA regulations.

Plaintiffs' complaint also runs afoul of the long-recognized legal maxim "*de minimis non curat lex,*" which "insulates from liability those who cause insignificant violations of the rights of others." *Ringgold* v. *Black Entertainment Television, Inc., Home Box Office, Inc.*, 126 F.3d 70, 74 (2nd Cir. 1997). It is well settled that this maxim, "the law does not concern itself with trifles," "is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept." *Wisconsin Dep't of Revenue* v. *Wrigley*, 505 U.S. 214, 231 (1992). "Whether a particular activity is a *de minimis* deviation from a prescribed standard must, of course, be determined with reference to the purpose of the standard." *Id.* at 233. Here, plaintiffs' are asking the court to shut down Kristine Travel, not because it has failed to abide the substantive FMCSA regulations, but because it checked one box on the application for operating authority, rather than the other, in 1999. As one commentator has observed, "fact patterns are rarely litigated illustrating this use of

10

the phrase [*de minimis non curat lex*], for, ... such circumstances would usually involve 'questions that never need to be answered [.]'" *Ringgold*, 126 F.3d at 74. This explains the utter lack of legal authority to support plaintiffs' position.

The plaintiffs' reliance on *Greyhound Lines, Inc. v. Monroe Bus Corp, et al.*, 309 F. Supp. 2d.104 (D.D.C. 2004) to support the grant of injunctive relief is unavailing. Citing to *Greyhound Lines, Inc.*, plaintiffs contend that 49 U.S.C. §14704 is "closely related" to §14707, the self-help provision under which they are proceeding here. Section 14704, however, provides for private enforcement of *an order* entered by the Secretary or Board by a person injured by a carrier's failure to obey said order. Here, no such order exists. Therefore, plaintiffs cannot rely on §14704 to rationalize their belated request for injunctive relief. The findings of the district court in *Bethke et al. v. Edson Express*, 459 F. Supp. 1374 (D. Colo. 1978) are likewise unavailing. The injunctive relief there was allowed following a plenary trial on the merits, which included live witness testimony and substantial documentary evidence. The *Bethke* court apparently had before it competent evidence establishing that defendant's actions resulted in substantial injury to plaintiffs. Such is not the case here. The only Court of Appeals to take up the issue of proper registration as raised by plaintiffs' in this case affirmed the district court's denial of plaintiffs' application for injunctive relief. See *e.g., Mercury Motors Express, Inc. v. Brinke*, 494 F.2d 39 (5th Cir. 1974), discussed more fully below.

    c)    <u>**Plaintiffs' Have Failed to Establish Injury Related to the Violation**</u>

The private enforcement provision of the Act provides:

> If a person provides transportation by motor vehicle or service in clear violation of section 13901-13904, *a person injured by the transportation or service may bring a civil action to enforce any such section.*

49 U.S.C. 14707(a). (Emphasis added.) Here plaintiffs' alleged "injuries" are at best chimerical.

Both plaintiffs admit to operating bus service between Boston and New York, as do defendants. As the Schwartz's Affidavit points out:

> [E]very day [defendants] operate, they divert more passengers from Peter Pan and lessen Peter Pan's profits, but there is no feasible way for Peter Pan to identify precisely the exact monetary harm we are suffering as Defendants continue to operate their services. With Peter Pan's knowledge of the market, we believe that many if not most of the passengers who ride Defendants' services would ride Peter Pan's service if Defendants' services were not available.

Schwartz Affidavit, page 12, paragraph 30. Plaintiffs' subjective beliefs are not competent evidence showing legally cognizable injury. See *e.g., Micro Networks Corp. v. HIG Hightec, Inc.*, 188 F. Supp 2d 18, 22 (D. Mass 2002) (plaintiff's "bare averment" found "inadequate to support a finding of irreparable harm sufficient to warrant the entry of a preliminary injunction"); *CMRK, Inc. v. Mooney, et. al.*, 193 F. Supp. 2d 286, 289-290 (D. Mass. 2001) ("plaintiff's bare averment that without injunctive relief, his business will suffer does not support a sufficient claim of irreparable injury.") Plaintiffs fail to mention that other companies exist which could easily fill the void left if defendants were force to close their businesses. (Lau Affidavit, paragraph 22.) Moreover, in stark contradiction of the Schwartz affidavit, Greyhound itself admits that other modes of transportation are competitive with regular route bus service:

> Intercity, scheduled, regular-route operations are the ordinary, expedited services provided to fare paying passengers ...*Such service is competitive with those offered by the air lines*, as, for example the Delta and U.S. Airways shuttle between LaGuardia Airport in New York and Logan National Airport in Boston and Amtrak's Accella [sic] service between Penn Station in New York and South Station in Boston. (Emphasis added.)

(See Affidavit of Gregory Alexander, Vice President of Greyhound Lines filed by plaintiffs.)

Thus, plaintiffs' injury is purely speculative. Plaintiffs have simply not established – nor can they – a causal link between defendants' service and their operating "at less than capacity on most all of its scheduled trips between Boston and New York." (Schwartz Affidavit, para. 31.) See *e.g., Public Serv. Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987) ("speculative injury does not constitute a showing of irreparable harm.") Plaintiffs' assertions of lost business are then at best anecdotal.

### d. Plaintiffs' Gambit to Eliminate Competition Has Already Been Rejected

At least one Court of Appeals has affirmed a district court's refusal to grant injunctive relief to plaintiffs attempting the same gambit as Peter Pan and Greyhound do here. In *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086 (5th Cir. 1973) plaintiffs – several freight forwarders licensed pursuant to s. 1010 – sought a preliminary injunction to stop an ICC licensed broker from effectively "functioning as a freight forwarder in blatant violation of the permit requirement of 49 U.S.C. 1010," and alleging that "they are injured by competition from [defendant's] unlawful enterprise." Id. at 1087. [49 U.C.S. 1010 is currently 49 U.S.C. § 13901]. The defendant claimed that his broker's license "at least colorably authorizes the services he renders so that there was no 'clear and patent' violation of s. 1010." Moreover, defendant pointed out that he had pending an application for a freight forwarder's license. Id. In affirming the district court's refusal to grant the requested injunctive relief, the Court of Appeals quoted the legislative history of the statutory amendment which became s. 1017(b):

> [T]he district courts of the United States should entertain only those actions under these sections, as amended, which involve *clear and patent attempts to circumvent regulation in the areas involved.*

Id. at 1093. (Emphasis added.). [49 U.S.C. § 1017(b) is currently 49 U.S.C. § 14707]. While the applicable standard is now a "clear" violation, the purpose remains the same, *i.e.*, to prevent

13

scoff-laws from competing unfairly with duly compliant carriers. The district court had properly denied the requested injunction because it found:

> Plaintiffs have failed to show irreparable injury as a consequence of defendant's activities. Defendant, on the other hand, has been continuously providing transportation services of the same nature since issuance of its broker's license previously referred to and would suffer irreparable injury if required to terminate such operations.

Id. at 1095. Kristine Travel has invested substantial sums of money to operate a fully compliant, law-abiding company. It has never attempted to circumvent any regulatory requirements in order to avoid legitimate operating costs and expenses. Plaintiffs have offered no evidence to the contrary.

## V. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE THE BALANCE OF HARMS WEIGHS IN FAVOR OF KRISTINE TRAVEL, NOT PLAINTIFFS

If the injunction requested by plaintiffs is issued, the resulting harm to Kristine Travel would greatly outweigh any harm which failure to grant the injunction may cause plaintiffs. The plaintiffs are large national bus companies many times the size of Kristine Travel which conduct business over hundreds of routes daily and nationwide. They have apparently joined forces for commercial advantage, although the parameters of their cooperative efforts are not presently known to defendants. Kristine Travel is a family-owned, local bus company operating out of the Chinatown section of Boston. It has developed a loyal repeat ridership which depends on its economical and safe bus service to New York City. If its operations were to be suspended as plaintiffs' request, Kristine Travel would loose its ridership, its goodwill, and its business. (Lau Affidavit, paragraph 21.)

## VI. THE PUBLIC INTEREST MILITATES AGAINST THE GRANTING OF THE PRELIMINARY INJUNCTION REQUESTED IN THIS CASE

It is beyond cavil to suggest that the right and ability of a competitor to sell goods or services at a lower price is somehow actionable given the free enterprise system under which American business operates. Kristine Travel can offer inexpensive, safe, and reliable transportation from Boston to New York because it does not have to support a large and cumbersome operating infrastructure – not because it has failed to implement compliance programs mandated by federal law. By their own admission, the plaintiffs are not in a position to compete with the fares offered by Kristine Travel. Ironically, if plaintiffs are successful in temporarily shutting Kristine Travel down on the basis of a superfluous technicality, it would be the traveling public who would suffer the "injury" of the plaintiffs' higher prices.

## VII. THE PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO SHOW IRREPARABLE HARM

It is well settled that "where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because 'revenues and customers lost to competition which can be regained through competition are not irreparable.'" *In re: ANC Rental Corp., et. al.*, 2002 U.S. Dist. Lexis 9409, citing *Central & Southern Motor Freight Tariff Ass'n v. Household Goods Carriers Bureau*, 757 F.2d 301, 309 (D.C. Cir. 1985). Moreover, "[s]peculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction." *Regan v. Vinick & Young*, 862 F.2d 896, 902 (1st Cir. 1988). To constitute irreparable harm an injury cannot be speculative, "it must be certain, great, and actual." *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 963 F. Supp. 1083, 1095 (D. Utah 1997). Plaintiffs' arguments amount to little more than "sour grapes" over defendants' apparent competitive advantage. Plaintiffs offer no evidence, but brazenly

boast that, if Kristine Travel were shut down, all of its customers would come to them. There are other Chinese-owned bus companies operating out of Chinatown in New York City which are aware of Kristine Travel's success. They could readily fill the void should Kristine Travel be ordered to cease operations. (Lau Affidavit, paragraph 22.)

## VIII. THE INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE UNREASONABLY DELAYED FOR YEARS IN SEEKING SUCH RELIEF

Even if plaintiffs could show a likelihood of success on the merits and irreparable harm – which they cannot – their lack of diligence clearly militates against enjoining Kristine Travel's operations. See *e.g. Bear USA, Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 910 (S.D.N.Y 1995) (plaintiff's three to four month delay in seeking injunctive relief to prohibit defendant from producing allegedly illegal competitive product "undercut the need for an urgency of a preliminary injunction.") Here, by their own admission, plaintiffs have waited years to take the present drastic action despite full knowledge of Kristine Travel's operations. The affidavit of Robert Schwarz, Peter Pan's Executive Vice President, makes this abundantly clear:

> Peter Pan, *by its long time standing as a major bus company in Boston, has generally been aware that Defendants' have been engaged in regular route operations between Boston and New York City for some time*, at least five years if not longer. I see the Fung Wah website says it has been operating this service for 8 years. (Emphasis added.)

See Schwarz Affidavit, pp. 18. Query why then they waited so long to take the present action? This inexplicable delay is fatal to plaintiffs' cause. See *e.g., Media3 Technologies, LLC v. Mail Abuse Prevention Systems, LLC et. al.*, 2001 U.S. Dist. LEXIS 1310 ("[plaintiffs'] delay in filing this application for a preliminary injunction after learning of the threatened harm is some evidence that the alleged 'serious harm' to [plaintiff]…has not been irreparable.") Moreover, as

16

the Court of Appeals stated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 494, 498 (2nd Cir. 1961):

> [I]t cannot be equitable for a well-informed merchant with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of a court decree, much that the competitor has striven for and accomplished ....

See also *Simon Says Enterprises, Inc. v. Schaffer d/b/a/ Bob Schaffer*, 1982 U.S. Dist. LEXIS 11412 (S.D.N.Y. 1982) (plaintiffs' injunctive relief claims barred by laches where plaintiffs' knew of defendant's allegedly unlawful competing activity yet did nothing for several years. The district court also stated: "Furthermore, the prejudice to defendant, who has established his own clientele and good will while performing during the past three years, is obvious.") Kristine Travel enjoys substantial customer goodwill as evidenced by its steady repeat business. It grew this business to its current degree of success while the plaintiffs' watched and simply hoped Kristine Travel would fail. The plaintiffs' now seek to rid themselves of the competition they have already lost.

## IX. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE THEY APPEAR BEFORE THE COURT WITH UNCLEAN HANDS

"It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad faith." *Texaco Puerto Rico, et. al., v. Department of Consumer Affairs, et. al.*, 60 F.3d 867, 880 (1st Cir. 1995). See also *Precision Instruments Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945) (the doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 910-912 (1st Cir. 1989) ("he who seeks equity must do equity"). Plaintiffs waited years to investigate defendants' registration status despite knowing of their operations. During those years, Kristine

Travel built from the ground up a viable business with substantial goodwill. Now, at the pinnacle of its success, plaintiffs seek to destroy Kristine Travel through legal process and court decree – in effect to eliminate the competition and attempt to capture a well-established existing customer base. Equity should not countenance such anti-competitive animus.

### X. IF THIS COURT WERE INCLINED TO GRANT THE INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS, THEN A BOND MUST BE POSTED IN AN AMOUNT SUFFICIENT TO PROTECT KRISTINE TRAVEL

Fed. R. Civ. P. 65 (c) requires that a bond be posted by a plaintiff seeking injunctive relief in a case such as this. See *e.g., Gillette Co. v. Norelco Consumer Products Co.*, 946 F. Supp. 115, 140 (D. Mass. (1996) ("[n]o… preliminary injunction shall issue except upon the giving of security by the applicant.") *Accord Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3rd Cir. 1984) (reversible error for district court to fail to require bond upon plaintiff's application for preliminary injunction). Kristine Travel will suffer immediate losses in excess of $500,000 if the relief sought by plaintiff is granted. Its ultimate loss and injury will be much greater, likely in the millions. (Lau Affidavit, paragraph 21.)

## XI. CONCLUSION

For the foregoing reasons, plaintiffs' motion for preliminary injunction should be denied in its entirety.

Respectfully submitted,
Kristine Travel, Inc.
By its attorneys

/s/ Darrell Mook

Darrell Mook
BBO No. 546754
Andrew P. Botti
BBO No. 558755
Nicole Castagna
BBO No. 655025
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
Tel.: (617) 406-4500
Fax: (617) 406-4501

Dated: 5/27/, 2004
00832586/23526.0

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail (by hand) on 5/27/-4

19